### THE IRA B. ELLEMS.

#### OTIS MANUF'G CO. *v.* THE IRA B. ELLEMS.

*(Circuit Court, E. D. Louisiana.* December 22, 1891.)

1. SHIPPING—CHARTER-PARTY—CONSTRUCTION.
   Under a charter-party which provides that the charterer shall furnish a cargo of logs, "to be delivered along-side, and held at charterer's risk and expense," the charterer is not entitled to damages for the loss of logs delivered along-side, but carried away by reason of negligent mooring.
2. ADMIRALTY—EVIDENCE—EX PARTE DOCUMENTS.
   The official documents of the officers of a foreign nation having jurisdiction of a port of lading, containing what purports to be a protest by a charterer against the action of the vessel, and depositions in support of the facts alleged in such protest, being *ex parte*, are not admissible to establish a controverted fact.
3. SHIPPING—LIEN FOR FREIGHT.
   The refusal of a master to deliver a cargo until security is furnished for the freight gives no right of action to the charterer, as the cargo is subject to a lien for freight.

In Admiralty. On appeal from the district court. Libel by the Otis Manufacturing Company against the schooner Ira B. Ellems for damages for breach of a charter-party. Decree for defendant.

*W. S. Benedict*, for libelant.

*O. B. Sansum*, for claimant.

PARDEE, J. The charter-party expressly states that the second party (the Otis Manufacturing Company) "doth engage to provide and furnish the said vessel a full and complete cargo of mahogany, and (or) cedar logs, under and on deck, to be delivered along-side, and held at charterer's risk and expense." This stipulation defeats the claim advanced by libelant for damages for loss of logs delivered along-side of the vessel, but carried away and lost by reason of negligent fastening and mooring. The evidence in the case is clear to the effect that the vessel, having previously obtained her clearance papers, reported for cargo according to contract; that the libelant's agent furnished cargo at various times until the vessel was nearly loaded, when, on the loss of a raft of logs by reason of negligent mooring to the ship, the agent notified the master that he had no more cargo to deliver, and was "ready to finish up;" and that the master tendered bills of lading, which were refused by the agent. And there is no evidence in the record to the contrary. This puts an end to the libelant's claim "that in contravention of law, good morals, and proper conduct, and in fact, said vessel, after having been partially loaded under said charter-party, ran away from said port of Tupilco, without signing proper papers or delivering any bills of lading under said charter-party." The official documents from the customs and other officials from the republic of Mexico, having jurisdiction of the place of lading, offered by the libelant, containing what purports to be a protest made by libelant's agent, and the deposition of certain witnesses in support of the facts alleged in the protest, being *ex parte*, are not admissible in evidence to establish any controverted fact, and are not, of themselves, even if admissible, sufficient in substance to contradict the sworn testimony offered by claimants on the hearing of this case. The fact that the master of the vessel demanded security for freight before delivering cargo gives rise to no cause of action on the part of the libelant. The master, under the contract and under the law, having a lien upon the cargo for the payment of freight, was authorized to refuse delivery until the freight should be secured or satisfied. The trouble with libelant's case is that, while on paper he has made serious charges, and set forth sufficient grounds of damage, he has utterly failed to establish the same by competent evidence. The decree in the district court could not have been other than as given, and a decree to the same effect must go upon the appeal.